IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ARVALYN K. POWELL                                               PLAINTIFF

V.                          NO. 15-5230

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration       DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Arvalyn K. Powell, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her application for DIB on October 26, 2012, alleging disability since September 7, 2012, due to back injury, depression, right knee, surgeries to her left arm in 2010 and 2011, "born with club foot smaller, ankle not stable pain in knee," and "lifting 20 max frequent lift carry to 10 or less both hands." (Doc. 11, pp. 159-160, 191, 194). An administrative hearing was held on October 18, 2013, at which Plaintiff appeared with counsel and testified. (Doc. 11, pp. 57-86).

1

By written decision dated March 7, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – osteoarthritis of the knee and back, left arm and hand pain, disorders of the muscle and connective tissue, obesity and depression. (Doc. 11, p. 42). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 11, p. 43). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except she would be able to handle on the left occasionally and finger on the left frequently. She would be able to perform work where interpersonal contact is routine, but superficial. Complexity of tasks is learned by experience with several variables in judgment within limits: supervision required is little for routine but detailed for non-routine.

(Doc. 11, pp. 43-44). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as gate guard and conveyor line bakery worker. (Doc. 11, pp. 50-51).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which looked at new evidence, and denied the request on July 20, 2015. (Doc. 11, pp. 5-9). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 9, 10).

**II.    Evidence Presented:**

Plaintiff was born in 1961. As a result of injuries occurring prior to the relevant time period, Plaintiff had surgeries on her left wrist in 2010 by Dr. C. Noel Henley, and in 2011 by Dr. James E. Kelly . (Doc. 11, pp. 266, 396).  After her 2010 surgery, Dr. Henley referred

Plaintiff to Dr. Jeff W. Johnson, who opined that further surgery may be of some benefit to her, and recommended a 5 pound work restriction limit for Plaintiff's left wrist. (Doc. 11, pp. 430-431).

After Plaintiff's 2011 left wrist surgery was performed, Dr. Kelly indicated on December 21, 2011, that Plaintiff may return to alternative duty on December 21, 2011, with no use of her left arm, and she was required to wear a splint. (Doc. 11, p. 277). Also on December 21, 2011, Dr. Kelly referred Plaintiff to therapy for her left wrist. (Doc. 11, p. 268).

On January 18, 2012, Dr. Kelly reported that he discontinued Plaintiff's splint and started her on some range of motion and strengthening exercises. (Doc. 11, p. 279). Dr. Kelly kept her on a 20 pound weight restriction, with no repetitive extension/flexion, pronation/supination of the left wrist. (Doc. 11, p. 279).

On February 9, 2012, Plaintiff saw Dr. Ann-Marie Magre, complaining of pain in her right medial knee. (Doc. 11, p. 323). She was assessed with right knee pain, acute. (Doc. 11, p. 323). A MRI taken on February 21, 2012, of her right knee revealed a questionable tear in the posterior horn of the lateral meniscus near the meniscal root ligament attachment site. (Doc. 11, p. 325).

On February 28, 2012, Plaintiff saw Dr. Andrew Heinzelmann, of Ozark Orthopaedics, regarding her right knee pain. (Doc. 11, p. 312). Dr. Heinzelmann reported that Plaintiff had a MRI scan, showing a questionable tear of the lateral meniscus; that Plaintiff was obese; that she had some tenderness medially, but no tenderness laterally over the knee; and that there was some pain with patellar grind. (Doc. 11, p. 312). Dr. Heinzelmann recommended conservative care, and counseled her about weight loss and exercise, which he

believed would improve her symptoms significantly, but wanted her to avoid high impact activities during exercise. He also recommended a cortisone injection. (Doc. 11, p. 313).

On February 29, 2012, Plaintiff followed up with Dr. Kelly regarding her wrist, who reported that Plaintiff's grip strength had "come up" nicely on her exam, because she had 60 pounds of grip strength on the right and 52 pounds on the left. (Doc. 11, p. 285). Dr. Kelly reported that this was a very good outcome, and that Plaintiff was "almost in normal ranges at all levels." (Doc. 11, p. 285).

On March 13, 2012, Kenneth Ness, OTS, CHT, of Trinity Rehabilitation, found that Plaintiff had the functional capacity to perform activities consistent with U.S. Department of Labor's "Light" work category (20 pounds occasional, 10 pounds frequent, nominal pounds constant), and recommended that her 20 pound lifting restriction be extended. (Doc. 11, p. 288). On March 16, 2012, Dr. Kelly addressed Mr. Ness' rating, and found that Plaintiff had some passive range of motion loss to the wrist, which equated to 3% upper extremity deficit. (Doc. 11, p. 302). Dr. Kelly felt that Mr. Ness' impairment rating as well as the functional capacity evaluation was an accurate assessment to the level and degree of her injury, and made them a part of her permanent record. (Doc. 11, p. 302).

On April 6, 2012, Plaintiff reported she was still having pain in the knee, and Dr. Heinzelmann noted that the cortisone injection he gave her had not helped. (Doc. 11, p. 311). His impression was "right knee pain, cannot rule [sic] early mild osteoarthritis." (Doc.11, p. 311). He opined that although he found some small spurring on the x-rays, he felt at that point, with the evidence of very mild osteoarthritis, Plaintiff may be a candidate for a Synvisc injection. (Doc.11, p. 311).

On April 9, 2012, Dr. Kelly reported that Plaintiff could return to alternative duty, with restrictions of light work, with frequent lifting or carrying restricted to objects weighing 10 pounds or less (using both hands). He concluded that her restrictions were in effect "permanent." (Doc. 11, p. 304).

On May 8, 2012, Plaintiff again saw Dr. Heinzelmann, after receiving a Synvisc injection on May 4, 2012. (Doc. 11, pp. 309-310). Upon examination, Dr. Heinzelmann found no effusion, no redness, no erythema, no warmth, no open wounds, and no drainage, and that Plaintiff was neurovascularly intact and moving her knee well, although she did have some patellar anterior pain. His impression was "right knee mild osteoarthritis with some patellofemoral-type pain." (Doc. 11, p. 309). He recommended straight leg raises, and ensured Plaintiff that she needed to give this a good six weeks to start working for her. (Doc. 11, p. 309).

On September 27, 2012, Plaintiff saw Dr. Magre, complaining of depression and needing a refill of Tramadol. (Doc. 11, p. 321). Dr. Magre reported that Plaintiff's extremities appeared normal, and there was no edema or cyanosis. (Doc. 11, p. 321).

On January 21, 2013, non-examining consultant, Brad F. Williams, Ph.D., completed a Psychiatric Review Technique report, and concluded that the case was rated as not having a determinable mental impairment, due to a lack of medical evidence supporting mental claims. (Doc. 11, p. 93). Also on or about that date, non-examining consultant, Dr. Jerry Thomas, completed a Physical RFC Assessment, concluding that Plaintiff could perform light work with no limitations. (Doc. 11, p. 94).

On February 15, 2013, Cheryl Woodson-Johnson, Psy. D., completed a Psychiatric Review Technique report, and found there was no opinion evidence in this case, and no

further development was warranted. (Doc. 11, p. 104). On or about that same date, Dr. Karmen Hopkins completed a Physical RFC Assessment, concluding Plaintiff could perform light work. (Doc.11, p. 105).

On August 1, 2013, Plaintiff saw Dr. Joseph Kradel, of IM Well Health, complaining of a swollen right ankle. (Doc. 11, p. 438). Plaintiff reported she had difficulty sleeping and frequent anxiety and depression. (Doc. 11, p. 438). She also reported her household included two daughters and a three month old grandchild, and two children under three that she cared for, although they were a family friend's children. (Doc. 11, p. 438). She reported she had been on Lexapro in the past. Dr. Kradel assessed Plaintiff with ankle sprain and depression, and restarted Plaintiff on Lexapro. (Doc. 11, p. 440).

On September 5, 2013, Plaintiff saw Dr. Catherine M. Womack, of IM Well Health, for follow-up on her depression. Plaintiff was also complaining of chronic low back pain. (Doc. 11, p. 433). Plaintiff reported she had not been to the doctor over the previous year because she could not afford it. (Doc. 11, p. 433). She was taking Tramadol for her back and knee pain, and reported she was told in the past that she had arthritis. Dr. Womack assessed Plaintiff with valvular heart disease. However, Dr. Womack based that assessment on Plaintiff's statement that she was told she had an infarction while at the hospital. Dr. Womack had no records of that, and Plaintiff was not on any cardiac medications, and was on NSAID, which Dr. Womack reported would be contraindicated. (Doc. 11, p. 435). Dr. Womack also assessed Plaintiff with arthralgia, but reported she would check the autoimmune lab, and felt like it was mostly osteoarthritis. Finally, Dr. Womack assessed Plaintiff with intervertebral disc degeneration, per Plaintiff's representation, because Dr. Womack had no records of it. Plaintiff advised Dr. Womack that she was applying for

6

disability, and when the doctor asked Plaintiff why, she was not sure, but thought it was her back. Dr. Womack noted that Plaintiff was able to carry her small grandchild while at that visit. (Doc. 11, p. 435).

On September 26, 2013, Plaintiff again saw Dr. Womack, complaining of chronic low back, neck, and right hip pain, and believed her depression was better on Lexapro. (Doc. 11, p. 467). Dr. Womack noted that Plaintiff did have some significant bilateral leg swelling, which was worse at the ankles. (Doc. 11, p. 467). Dr. Womack also observed that Plaintiff was obese, at 238 pounds. (Doc. 11, p. 468).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §404.1520, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §404.1520.

**IV.   Discussion:**

Plaintiff argues as follows: 1) The Appeals Council failed to consider additional medical evidence that Plaintiff submitted after the ALJ's decision; 2) The ALJ erred by not

8

obtaining a mental status consultative examination and by not further developing the record regarding Plaintiff's degree of restriction from her physical conditions; 3) The ALJ erred by not properly evaluating and weighing the medical and opinion evidence; 4) The ALJ failed to consider the combined effect of Plaintiff's venous insufficiency, obesity, arthritis swelling and pain, and degenerative knee condition on her ability to do light work; and 5) The ALJ erred at Step Five of his analysis. (Doc. 9).

### A. Consideration of Impairments in Combination:

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Doc. 11, p. 41). He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Doc. 11, p. 41). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Doc. 11, p. 41). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Doc. 11, p. 43). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

### B. Credibility

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily

9

activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ addressed Plaintiff's daily activities, noting that Plaintiff was able to perform personal care, prepare meals, do light cleaning and laundry, drive a car, shop for essentials, and carry her small grandchild. (Doc. 11, pp. 43, 48). The Court also notes that on August 1, 2013, Plaintiff reported to Dr. Kradel that she cared for two children under the age of three. (Doc. 11, p. 438). The ALJ also discussed Plaintiff's medical records, medications, and the effectiveness of the medications. (Doc. 11, pp. 44-49).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination and Weight Given to Opinions:

Plaintiff argues that the ALJ failed to properly evaluate and weigh the medical and opinion evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting

from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

11

In determining that Plaintiff would be able to perform light work with certain limitations, the ALJ carefully considered and discussed all of the medical records, although many of them pre-date the relevant time period. (Doc. 11, pp. 44-45). The ALJ noted that after the relevant time period began, on September 27, 2012, Plaintiff saw Dr. Magre, complaining of depression and chronic pain, and her physical examination was within normal limits. (Doc. 11, p. 46). For example, Dr. Magre reported Plaintiff's extremities appeared normal, with no edema or cyanosis. (Doc. 11, p. 322). Dr. Magre also recommended aerobic exercises and a low cholesterol diet. (Doc. 11, p. 322). The ALJ discussed the medical records from Dr. Womack and Dr. Kradel, who treated Plaintiff during the relevant time period. (Doc. 11, p. 46). Test results dated September 5, 2013, indicated that Plaintiff had a slightly elevated rheumatoid factor of 14, with normal ranging from 0-13. (Doc. 11, p. 46, 461). The ALJ also noted that on September 26, 2012, Plaintiff reported to Dr. Womack that her depression was improved, and there was significant bilateral leg swelling, worse at the ankles. (Doc. 11, p. 46). Dr. Womack believed the edema was most likely from venous insufficiency, and was going to start Plaintiff on a low dose diuretic. (Doc. 11, pp. 46, 468). Dr. Womack discussed sending Plaintiff for a MRI of her back, but Plaintiff wanted to discuss it with her husband first. (Doc. 11, p. 468).

The ALJ also discussed Plaintiff's visits to a chiropractor and the effect of her obesity on her ability to function. (Doc. 11, p. 46). The ALJ discussed Plaintiff's contentions that she had overuse syndrome of the right hand, right knee pain, back pain, ankle pain and swelling, and mental impairments, and addressed the evidence, or lack thereof, relating to those contentions. (Doc. 11, pp. 48-49).

The ALJ gave controlling weight to the opinion of Dr. Kelly; great weight to the opinion of Dr. Heinzelmann; some weight to the opinions of Dr. Magre, Dr. Womack, and Dr. Kradel; and little weight to the opinion of the chiropractor. (Doc. 11, pp. 49-50). The ALJ also found the state medical consultants' opinions were "valid." (Doc. 11, p. 49).

Plaintiff argues that the ALJ relied almost exclusively on evidence originating months or years prior to her onset date. However, as noted earlier, the ALJ considered and discussed all of the medical records, and his conclusions relating to Plaintiff's RFC are consistent with the records dated during the relevant time period. For example, neither Dr. Womack nor Dr. Kradel placed any functional limitations upon Plaintiff, and as observed by the ALJ, no referrals were made for treatment by a mental health provider, or specialist, such as a neurologist, orthopedist, or rheumatologist. (Doc. 11, p. 49).

Based upon the foregoing, as well as the record as a whole, the Court believes there is substantial evidence to support the ALJ's RFC and the weight he gave to the various opinions.

**D. Failure to Fully Develop the Record:**

Plaintiff argues the ALJ failed to fully develop the record by not ordering a mental status consultative exam and by not further developing the record regarding Plaintiff's degree of restriction from her physical conditions.

"Plaintiff bears a heavy burden in showing the record has been inadequately developed." Chapman v. Colvin, No. 4:15-CV-00522-JLH-JJV, 2016 WL 2585652 at *4 (E.D. Ark. Apr. 11, 2016). The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering

additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

With respect to Plaintiff's alleged mental impairments, the ALJ had before him the report of Dr. Magre dated September 27, 2012, where she reported that Plaintiff's depression was moderate and "stable." (Doc. 11, p. 321). The ALJ also had before him the Psychiatric Review Technique report of Dr. Brad Williams, dated January 16, 2013, where Dr. Williams noted that Plaintiff had no formal mental treatment, and that her comments suggested she was not able to work due to medical problems and was not depressed but stressed by her health problems. (Doc. 11, p. 93). He found her complaints did not rise to the level of being given a mental diagnosis. (Doc. 11, p. 93). Also before the ALJ was the Psychiatric Review Technique report of Cheryl Woodson-Johnson, Psy.D., dated February 13, 2013, where she echoed the findings of Dr. Williams. (Doc. 11, p. 104). By September 26, 2013, Plaintiff

14

reported to Dr. Womack that she thought she was better on the Lexapro, and Dr. Womack reported her depression was improved. (Doc. 11, p. 467). The Court believes there was sufficient evidence before the ALJ to make a determination regarding Plaintiff's alleged mental impairments.

As to Plaintiff's physical impairments, as previously indicated, there were numerous records before the ALJ for him to make a determination regarding Plaintiff's physical conditions, including Plaintiff's arthritic condition. Again as stated earlier, on September 27, 2012, Dr. Magre found Plaintiff's extremities to be normal. (Doc. 11, p. 322). Almost one year later, on September 5, 2013, Dr. Womack reported that she felt like Plaintiff's alleged arthralgia was mostly osteoarthritis. (Doc. 11, p. 435). On September 26, 2013, Dr. Womack noted some bilateral leg swelling and Plaintiff's obesity (238 pounds) and was going to prescribe some low dose diuretic. (Doc. 11, p. 468).

The ALJ also discussed Plaintiff's obesity, and the effect it had upon Plaintiff's ability to perform routine movement and necessary physical activity within the work environment. (Doc. 11, pp. 46-47). He noted that Plaintiff was 5'5" tall, weighed 237 pounds, and that the medical records did not indicate that she had difficulty with ambulation or that she used a cane. (Doc. 11, p. 47). He also noted that weight loss and exercise had been recommended, although the records do not reveal that Plaintiff either lost weight or exercised.

The Court believes there was substantial evidence before the ALJ for him to make a determination regarding Plaintiff's physical impairments.

**E. Step 5 Analysis:**

Plaintiff argues that there was some controversy as to whether Plaintiff would be able to keep up with an assembly line pace. What Plaintiff fails to note is that there was another job the ALJ found Plaintiff would be able to perform, that of gate guard, and Plaintiff's argument on this issue is therefore moot.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform such jobs as gate guard and conveyor line baker worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**F. Additional Evidence Submitted to the Appeals Council:**

Plaintiff argues the Appeals Council failed to consider additional evidence that was new, material, and related to the period on or before the date of the ALJ's decision. Over three months after the ALJ's decision, and almost nine months after Plaintiff saw Dr. Womack, on June 17, 2014, Plaintiff began seeing Dr. Thomas R. Dykman, of MANA Fayetteville Diagnostic Clinic. (Doc. 11, p. 21). On July 3, 2014, Dr. Dykman diagnosed Plaintiff with polyarthritis, inflammatory, sub-optimal control (folic acid/methotrexate begun); elevated CPK, mild; myalgia, improved; and high risk medication use, uncertain. (Doc. 11, p. 17). On August 24, 2014, Dr. Dykman diagnosed Plaintiff with polyarthritis,

inflammatory, sub-optimal control; elevated CPK; fibromyalgia, sub-optimal control; obesity; and high risk medication abuse. (Doc. 11, p. 11).

"When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, '[courts] do not evaluate the Appeals Council's decision to deny review, but rather [courts] determine whether the record as a whole, including the new evidence, supports the ALJ's determination.'" Greiner v. Colvin, No. 15-CV-4075-LTS, 2016 WL 2869784 at *8 (N.D.Iowa May 17, 2016)(citations omitted). A remand is proper only if the new evidence is relevant and probative of the claimant's condition for the time period for which the benefits were denied. Id. (citations omitted).

In this case, the Appeals Council did not fail to consider the new evidence, but indicated that it looked at evidence covering the period June 18, 2014 through August 28, 2014, from Fayetteville Diagnostic Clinic, and that as the new information was about a later time, it did not affect the decision about whether Plaintiff was disabled beginning on or before March 7, 2014. (Doc. 11, p. 6). The Appeals Council also advised Plaintiff that if Plaintiff wanted it to consider whether she was disabled after March 7, 2014, she needed to apply again. (Doc. 11, p. 6). Applying the standard set forth by the Eighth Circuit, the Court believes, that the record as a whole, including the new evidence, supports the ALJ's determination.

## V.   Conclusion:

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. §**

**636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 13rd day of October, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE